# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00731-CR

**Scott MacKenzie, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 403RD JUDICIAL DISTRICT
## NO. 3021959, HONORABLE BRENDA KENNEDY, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found Scott MacKenzie guilty of sexual assault and assessed sentence at seven years and six months in prison. *See* Tex. Pen. Code Ann. § 22.011 (West Supp. 2006). On appeal, he asserts that the trial court erred by admitting evidence of an extraneous offense. He contends that the evidence of another incident with another woman was improperly used to show character conformity and, alternatively, that its probative value was substantially outweighed by its prejudicial effect. We affirm the judgment.

H.M., the complaining witness, denied consenting to have sex with MacKenzie. The incident occurred at the home of Allison Walsh, H.M.'s friend and MacKenzie's then-girlfriend. H.M. testified that, based on previous experience, she did not like or trust MacKenzie. On the night of the incident, H.M. was staying with Walsh while visiting from out of town. She, Walsh, MacKenzie, and some others went to a restaurant and a few bars before returning to Walsh's home.

H.M. testified that she went upstairs to sleep and awoke to find MacKenzie having sex with her. She testified that she said "no" a couple of times and "what are you doing?" and waved her arm at him to signal him to stop. She testified that MacKenzie then left the room without speaking. Other witnesses testified that, based on H.M.'s previously expressed disdain for MacKenzie, they did not believe that she would have consented to have sex with him. Walsh testified that MacKenzie initially admitted to her that the encounter with H.M. was not consensual and begged Walsh's forgiveness for raping H.M. Walsh testified that Mackenzie only later began to espouse the theory that H.M. had consented.

MacKenzie testified that he believed that the encounter was consensual. He testified that, in March 2002, he and H.M. had frank discussions about sex, flirted, and took erotic pictures. On the night of the incident, after Walsh declined to have sex with him, MacKenzie testified that he went upstairs to "take a shot" and see if H.M. would have sex with him. She was sleeping on her stomach with her head turned to one side when he entered the room. He climbed into bed with her, rubbed her shoulders, and told her she was beautiful. He testified that H.M. opened her eyes, moaned a bit, and closed her eyes. MacKenzie testified that she seemed receptive to his advances and that, as he progressed from oral sex to intercourse, she facilitated his advances by repositioning her body. He said she eventually looked at him fully aware of who he was and what they were doing. He testified that, after they stopped having sex, H.M. began to express regret. In his argument to the jury, MacKenzie noted that H.M. did not complain of sexual assault for more than a week.

After MacKenzie testified that he believed H.M. consented to the encounter, the State questioned him about an extraneous burglary offense. The extraneous offense, which occurred

2

twenty-six months after the encounter at issue in this appeal, was the subject of MacKenzie's conviction of burglary of a habitation with intent to commit sexual assault.[1] In that case, a woman awoke to find that MacKenzie had entered her apartment without her knowledge or consent and was masturbating beside her. MacKenzie testified at trial in this case that he believed that the woman in that case had invited him into her apartment. The woman was an acquaintance who lived in a nearby apartment. Through an open window, he saw her lying on her couch. He thought she might not be asleep and spoke to her through the window and at some point exposed his penis. MacKenzie testified that he thought she nodded at him, giving him consent to enter her apartment. He walked in through a door. Although MacKenzie believed that she was awake and consented to his entrance into the apartment, the woman soon thereafter screamed, asked what MacKenzie was doing, and left the room. MacKenzie said, "I thought you knew what was up." He then left the apartment.

MacKenzie's sole issue on appeal is that the admission of the burglary offense was error. He contends that it was not within the exceptions to the ban on evidence of other crimes, wrongs, or acts to show character conformity. *See* Tex. R. Evid. 404(b). Even if the evidence is otherwise relevant, he contends that evidence of the burglary is inadmissible because its probative value is substantially outweighed by the risk of unfair prejudice, confusion of the issues, or misleading the jury. *See id*. 403. The State contends that the evidence was admissible to show H.M.'s lack of consent to sexual contact and the absence of mistake by MacKenzie concerning her

---

[1] This extraneous encounter resulted in a conviction that is the subject of a separate appeal pending in this Court. *See MacKenzie v. State*, No. 03-06-00074-CR (Tex. App.—Austin filed Feb. 1, 2006).

consent. When reviewing a trial court's decision to admit or exclude evidence, an appellate court must determine whether the court's decision was an abuse of discretion. *Shuffield v. State*, 189 S.W.3d 782, 793 (Tex. Crim. App. 2006). Unless the trial judge's decision was outside the zone of reasonable disagreement, an appellate court should uphold the ruling. *Id*.; *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990).

While evidence of other crimes "is not admissible to prove the character of a person in order to show action in conformity therewith," it may be admissible to show intent or absence of mistake or accident. Tex. R. Evid. 404(b). Lack of consent is an element of a sexual assault offense. *See* Tex. Pen. Code Ann. § 22.011. The State must prove not only that the complaining witness did not consent, but that the defendant had sex with the complainant knowing of that lack of consent. *See id*.; *Brown v. State*, 96 S.W.3d 508, 512 (Tex. App.—Austin 2002, no pet.). When a defendant contests the issue of consent, the State may introduce evidence of incidents involving the defendant with a similar pattern of behavior in order to show his intent and the lack of mistake regarding the consent of the complaining witness. *Brown*, 96 S.W.3d at 512 (citing *Rubio v. State*, 607 S.W.2d 498, 501 (Tex. Crim. App. 1980)). This Court summed up the theory of admissibility as follows:

> When the defendant's intent to commit the offense charged is at issue, the relevance of an extraneous offense derives from the doctrine of chances—the instinctive recognition of that logical process which eliminates the element of innocent intent by multiplying instances of the same result until it is perceived that this element cannot explain them all. *Cantrell v. State*, 731 S.W.2d 84, 90 (Tex. Crim. App. 1987); *Wiggins* [*v. State*], 778 S.W.2d [877] at 885 [(Tex. App.—Dallas 1989, pet. ref'd)]. An unusual or abnormal element might be present in one instance, but the more often it occurs the less likely it is to be the true explanation. *Cantrell*, 731 S.W.2d at 90; *Wiggins*, 778 S.W.2d at 885. For the doctrine to apply, there must be a similarity between the charged and extraneous offenses, since it is the improbability of a like result being repeated by mere chance that gives the extraneous offense

4

> probative weight. *Plante v. State*, 692 S.W.2d 487, 492 (Tex. Crim. App. 1985). The degree of similarity required, however, is not as great when intent is the material issue as when identity is the material issue and the extraneous offense is offered to prove *modus operandi*. *Cantrell*, 731 S.W.2d at 90; *Wiggins*, 778 S.W.2d at 886.

*Id*. at 512-13. While this theory of admissibility closely resembles using the evidence to show character conformity, it is one of the recognized exceptions to the exclusion of extraneous offense evidence. *Id*.; *see also* Tex. R. Evid. 404(b); *Daggett v. State*, 187 S.W.3d 444, 452 (Tex. Crim. App. 2005).

In this case, after MacKenzie asserted that he thought H.M., while sleeping or near sleeping, consented to the encounter in part by the way she moved her body, the State asked him about the other similar incident. In the extraneous offense, MacKenzie interpreted body language of a sleeping woman as consent to enter her apartment and masturbate near her. In both incidents, the woman was sleeping or drowsing. In both incidents, MacKenzie interpreted body movement as an invitation to sexual activity. In both incidents, the women deny consenting or even being aware of MacKenzie's presence before awakening to discover the sexual activity in progress. The similarities in these incidents invoke the "doctrine of chances" to show that MacKenzie intended to have sex with H.M. without her consent.

MacKenzie contends alternatively that the evidence should not have been admitted because its probative value was substantially outweighed by the prejudicial effect of its admission. *See* Tex. R. Evid. 403. The trial court should consider several factors in determining whether the prejudicial effect of evidence substantially outweighs its probative value under Rule 403. These factors include:

that the ultimate issue was not seriously contested by the opponent; that the State had other convincing evidence to establish the ultimate issue to which the extraneous misconduct was relevant; that the probative value of the misconduct evidence was not, either alone or in combination with other evidence, particularly compelling; that the misconduct was of such a nature that a jury instruction to disregard it for any but its proffered purpose would not likely have been efficacious.

*Montgomery*, 810 S.W.2d at 392-93; *see also Wheeler v. State*, 67 S.W.3d 879, 888 (Tex. Crim. App. 2002). The extraneous offense evidence was used to address consent—the only issue contested at trial. The State had other evidence showing lack of consent, including the complaining witness's testimony and that of other witnesses who said that the complaining witness's expressed dislike of MacKenzie made consensual sex unlikely and that MacKenzie initially and repeatedly admitted that the sex was nonconsensual. We do not find that the trial court abused its discretion in concluding that the chance of unfair prejudice did not substantially outweigh the probative value of the extraneous offense evidence.

Even if the admission of the evidence were erroneous, we conclude that it was harmless because of the compelling nature of other unchallenged evidence that H.M. did not consent to have sex with MacKenzie. Error in the admission of evidence is subject to a harm analysis. *See* Tex. R. App. P. 44.2; *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998). A violation of the evidentiary rules that results in the erroneous admission of evidence is nonconstitutional error. *See King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). Any nonconstitutional error "that does not affect substantial rights must be disregarded." Tex. R. App. P. 44.2(b). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *See King*, 953 S.W.2d at 271. A criminal conviction should not be overturned for

nonconstitutional error if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury or had but slight effect. *See Johnson*, 967 S.W.2d at 417. In making this determination, we consider a trial court's erroneous admission of an extraneous offense in the context of the entire record and not just whether there was sufficient or overwhelming evidence of the defendant's guilt. *Motilla v. State*, 78 S.W.3d 352, 355-56 (Tex. Crim. App. 2002). In addition to H.M.'s testimony, the record contains testimony that H.M. was unlikely to have consented to sex with MacKenzie because she actively disliked and distrusted him. More critically, Walsh testified that MacKenzie initially and repeatedly admitted that the encounter was nonconsensual. While this evidence, too, was met by MacKenzie's testimony to the contrary, that is a matter of credibility.

Finding no error or harm in the admission of the evidence of an extraneous offense, we affirm the judgment.

_____

G. Alan Waldrop, Justice

Before Justices Pemberton, Waldrop and B. A. Smith*

Affirmed

Filed: January 22, 2006

Do Not Publish

* Before Bea Ann Smith, Justice (retired), Third Court of Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003(b) (West 2005).